**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| In re: | ) |
| | ) |
| Sophea Wentz, | )   Case No. 25-11661-KHK |
| | )   Chapter 13 |
| | ) |
| Debtor. | ) |
| | ) |

**MEMORANDUM OPINION**

This matter came before the Court on May 21, 2026 for a hearing on the Objection to Confirmation filed by John Wentz (Docket No. 106), the Objection to Confirmation filed by the Chapter 13 Trustee (Docket No. 87), the Application for Compensation filed by the Debtor's counsel (Docket No. 37) and the Second Application for Compensation filed by the Debtor's counsel (Docket No. 89).  Counsel for Mr. Wentz, counsel for the Debtor and the Chapter 13 Trustee appeared and presented arguments on the narrow issue of whether the Debtor could propose a plan with a "pot deduction" to allow for payment of the Debtor's counsel's fees.[1]  In other words, does a debtor's attorneys' fees come out of the "pot" for unsecured creditors created by the debtor's disposable monthly income under section 1325(b)(1)(B) of the Bankruptcy Code.

For the reasons that follow, the Court holds that allowed reasonable attorneys' fees for an above-median debtor must be deducted when calculating disposable income under the means test pursuant to section 707(b)(2)(A)(iv), and therefore, the Court need not resolve whether attorneys' fees or other priority claims may be addressed through a "pot deduction" under section 1325(b)(1)(B).  The Court will address the fee applications in a separate decision.

---

[1] Mr. Wentz previously objected to confirmation on additional grounds and reiterated those grounds in his most recent objection, but those grounds have been resolved by prior rulings.  *See* Hr. Tr. for March 12, 2026 Hearing, Docket No. 84; Docket No. 106 (Amended Objection reiterating prior arguments).

## Jurisdiction

The Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1334. This is a core matter under 28 U.S.C. § 157(b)(2)(L) (confirmation of plans). Venue is proper under 28 U.S.C. § 1409.

## Background

The Debtor filed a voluntary petition under chapter 13 of the Bankruptcy Code on August 14, 2025. Docket No. 1.

The Debtor filed her most recent plan on April 10, 2026.  Docket No. 88.[2]  The Debtor also filed an amended statement of current monthly income on April 15, 2026, following the Court's March 12, 2026 rulings on various objections related to the Debtor's calculation of her disposable monthly income.  The Debtor's plan does not propose to pay creditors in full, but instead, proposes to pay the "pot" created by her disposable monthly income to unsecured creditors under section 1325(b)(1)(B).  Docket No. 88.

As indicated in her statement of current monthly income, the Debtor's current monthly income is greater than the highest median family income for Virginia debtors with her household size, and therefore, her disposable monthly income is calculated in accordance with sections 1325(b)(3) and 707(b)(2) of the Bankruptcy Code.  In other words, she must calculate disposable monthly income using the means test.   11 U.S.C. § 1325(b)(3).

## The Parties Positions

The only dispute before the Court with respect to disposable monthly income is not whether the Debtor is actually committing her disposable monthly income to "unsecured creditors" as is required under section 1325(b)(1)(B) of the Code.  The parties do not dispute the calculation of the means test at this point.[3]

---

[2] While the Debtor filed previous plans, which drew objections, the Court has already ruled on those issues and the previous plans and corresponding means tests filed with them are not relevant to the Court's decision.
[3] Although the parties do not directly challenge the means test, based on the Court's ruling herein, it is necessarily implicated by the issues before the Court—namely, the question of whether and how to account for attorneys' fees in considering confirmation of the Debtor's chapter 13 plan.

The dispute, as framed by the parties, centers around the Debtor's request to pay her attorneys' fees from the pot.

The Trustee maintains that the Debtor's attorneys' fees cannot be paid out of the "pot."  Mr. Wentz also maintains that the fees should not be paid out of the pot, arguing that the Debtor is not committing her full disposable monthly income to the payment of unsecured creditors.  Neither party has identified controlling authority or a statutory basis in the Code to support their interpretation.  Both Mr. Wentz and the Trustee are essentially making a policy argument that unsecured creditors should not be paying the Debtor's attorneys' fees.

**Analysis**

Although the parties have framed the issue as whether attorneys' fees may be paid from the pot, the real question before the Court is how the Bankruptcy Code accounts for attorneys' fees for above-median chapter 13 debtors.

Generally speaking, to confirm a chapter 13 plan, section 1325(b) requires that the Debtor either pay unsecured creditors in full or pay all of her projected disposable income for the applicable commitment period to her unsecured creditors.  11 U.S.C. § 1325(b).  The Debtor is not paying unsecured creditors in full, so she is necessarily proceeding under section 1325(b)(1)(B).  The Debtor is not deducting the attorneys' fees from her income as part of her calculation of her disposable income using the means test.[4] Instead, she is proposing that her attorney share in the "pot" of funds created by her plan payments under 1325(b)(1)(B).

The Trustee and Mr. Wentz' objections rest on the proposition that the Debtor's attorneys' fees are diluting the pot of funds being paid to unsecured creditors and that therefore, the Debtor is not satisfying section 1325(b)(1)(B) of the Code.  Of course, a debtor's attorneys' fees certainly seem like a type of unsecured claim, as they are not secured by collateral. But does that mean they can share in the pot created

---

[4] The Debtor previously included such a deduction, but in her most current calculations the deduction has not been made.

3

by the Debtor's disposable monthly income under 1325(b)(1)(B)? Or, does the Code already account for such fees elsewhere?

Section 1325(b)(1) provides in relevant part,

> If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
>
> …
>
> (B)the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

On its surface, and as framed by the parties, it would appear that the Court's inquiry is limited to the meaning of "unsecured creditors" and whether it includes attorneys' fees. However, before the Court can determine whether projected disposable income has been committed to unsecured creditors under 1325(b)(1)(B), it must first determine the proper calculation of disposable income.   For above-median debtors, Congress has instructed that the calculation is made according to the means test in subparagraphs (A) and (B) of section 707(b)(2) of the Code.  Accordingly, the Court begins with how the means test deals with attorneys' fees.

Section 707(b)(2)(A)(iv) expressly includes as part of the calculation a deduction for payment of all priority claims.  Official Form 122C-2, however, does not include a deduction for attorneys' fees and seems to limit priority claims to those that were incurred prepetition.  In the case at bar, the Debtor's attorney has submitted two fee applications.   While the Court will address the reasonableness of those fees separately, if the Court approves the fees under section 330(a)(4), such fees will be entitled to priority under section 507(a)(2) as administrative expenses allowed under section 503(b)(2).  The fees would therefore be a priority claim.[5]

---

[5] While bankruptcy professionals refer to claims entitled to priority under section 507 as priority claims, that term is not defined in the Bankruptcy Code.  Indeed, it is only used in section 707(b)(2)(A)(iv) and in the heading of section 1171 in subchapter IV of chapter 11, which is only applicable to railroad reorganizations.  *In re Dumas*, 608 B.R. 902, 914 (Bankr. N.D. Ga. 2019) (noting that "the only other appearance of the term 'priority claims' in the Code predates § 707(b)(2)(A)(iv) by over twenty-five years and explicitly includes an administrative expense.").  The Court agrees with the *Dumas* court that allowed reasonable attorneys' fees are priority claims for purposes of the means test.

While the parties did not meaningfully brief the issues addressed here, this Court finds the case of *In re Dumas*, 608 B.R. 902, 921 (Bankr. N.D. Ga. 2019) to be particularly instructive on the issues before it. The Court previously cited *Dumas* with approval when considering a double-dipping issue related to attorneys' fees in *In re Machado*, No. 22-11030-KHK, 2023 WL 4239527, at *3 (Bankr. E.D. Va. June 28, 2023).[6]

In *Dumas*, Bankruptcy Judge Jeffery W. Cavender, of the Northern District of Georgia, analyzed whether attorneys' fees for above-median debtors should be deducted in calculation of the means test or if they can be accounted for by taking a pot deduction.

Judge Cavender's thoughtful opinion analyzed both the means test and the pot deduction and concluded that above-median debtors should deduct attorneys' fees in calculation of the means test before calculating the minimum amount to be paid to nonpriority unsecured creditors. In arriving at this conclusion, Judge Cavender analyzed the meaning of "priority claims" as used in the means test and after considering the Code itself, the legislative history behind BAPCPA[7], and pre-BAPCPA practice, concluded that the term includes administrative expenses such as attorneys' fees. *In re Dumas*, 608 B.R. at 911-920. Further, he concluded that such deduction was proper under the Code, even where Official Form 122C-2 limits inclusion of priority claims to those that are past due as of the petition date. *Id*. at 919-920. Even though the Official Forms aim to facilitate and implement the commands of the Code, conflicts between the language of the Form and the Code must be resolved in favor of the Code. Put simply, the plain language of the Code trumps the Forms. *Id*. at 920.

Judge Cavender also analyzed whether the pot deduction was permissible, observing that while the Advisory Committee Comments to the Official Form endorsed the pot deduction, there were still difficulties

---

[6] Interestingly, in *Machado*, Debtor's counsel was the same attorney who represents Mr. Wentz in the instant matter. In *Machado*, Debtor's counsel cited to *Dumas* in support of his client's position but for reasons that are not apparent to the Court, did not cite to *Dumas* in the instant matter.

[7] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") implemented the means test and its incorporation into the calculation of disposable income for above-median debtors. The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 110 Stat. 23.

with that approach when considering the plain language of the Code.  In addition to his analysis of whether the means test includes a deduction for attorneys' fees, Judge Cavender noted that the term unsecured creditors, as used in 1325(b)(1)(B) might be limited to prepetition claims.  *Id*. at 920 ("The term 'creditor' is defined in the Code as an 'entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor ....' Code § 101(10).'").  Thus, the pot deduction, which relies on the premise that the phrase unsecured creditors includes post-petition priority claims, is on shaky statutory ground.  Further, if priority claims are included in the means test (which they are, even if attorneys' fees are not), then interpreting unsecured creditors as used in section 1325(b)(1)(B) would necessarily result in a double-dip.  This cannot be what Congress intended.

Notwithstanding that the pot deduction has statutory issues (which may or may not be the result of careless drafting in the Code), the Court need not address it to resolve the instant dispute.[8]  The Court agrees with the *Dumas* opinion that priority claims, as used in the means test, includes allowed attorneys' fees, and that such fees should be deducted in calculating the means test.  *Dumas* is particularly persuasive because it is rooted in the plain language of the Code rather than policy arguments and deference to the Official Forms, it prevents double dipping, and honors the priority schemes enacted by Congress.  The Seventh Circuit Court of Appeals recently reached a consistent conclusion, recognizing that attorneys' fees are reasonably necessary expenses properly deducted in calculating disposable monthly income.  *In re Falkner*, No. 25-2878, 2026 WL 1678865, at *4 (7th Cir. June 10, 2026) (observing that attorneys' fees are reasonably necessary expenses for both above-median and below-median debtors in chapter 13).[9]

---

[8] Regardless of whether the pot deduction is viable under the Code, the Court reiterates, as it held in *Machado*, that in no event should priority claims be counted more than once, whether in the means test or via a pot deduction.

[9] While the Debtor in the instant matter is an above-median debtor subject to the means test, both *Dumas* and *Falkner* recognize that below-median debtors too should be able to deduct reasonable allowed attorneys' fees when calculating disposable income.  Although priority claims are not expressly identified in the disposable income calculation for below-median debtors, nothing in the Code prevents deduction of allowed reasonable attorneys' fees as a reasonable and necessary expense "for the maintenance or support of the debtor or a dependent of the debtor…" under 11 U.S.C. § 1325(b)(2)(A).

Resting on policy arguments rather than the text of the Code, the Trustee and Mr. Wentz argue that unsecured creditors should not foot the bill for the Debtor's attorneys' fees.  However, as Judge Cavender astutely observed in *Dumas*,

> [i]f the primary goal of the means test is to ensure that debtors are channeled into chapter 13 cases instead of chapter 7 for the benefit of unsecured creditors, then it makes sense for unsecured creditors to pay the extra freight that comes with a chapter 13 case meant to serve them. The better policy is the one that eliminates barriers to hiring counsel, not raises them. Trustee's position erects such a barrier.

*In re Dumas*, 608 B.R. at 923.

Finally, at the hearing on this matter, the Trustee suggested that a solution to the issue might be for the Debtor to make a *Lanning*[10] adjustment for the attorneys' fees.  However, *Lanning* adjustments are not to be made to achieve a result that the Code already requires, albeit through a circuitous route.  They are for unusual cases, and as Judge Cavender observed in *Dumas*, there is nothing unusual about attorneys' fees.

**Conclusion**

For the foregoing reasons, the Court holds that above-median debtors must deduct as priority claims allowed reasonable attorneys' fees in the calculation of the means test under section 707(b)(2)(A)(iv). Because the Debtor's current means test does not deduct allowed attorneys' fees as priority claims, and the proposed chapter 13 plan is premised on that calculation, amendment for both the means test and plan is required.

Based on the foregoing, the Court will require the Debtor to amend her means test and plan in accordance with this decision within 21 days of its entry.  The Trustee's and Mr. Wentz' objections to confirmation will become moot upon the filing of the amended plan and means test. The Court will address the pending fee applications in a separate ruling.

---

[10] *Hamilton v. Lanning*, 560 U.S. 505 (2010).

7

Date: _Jul 15 2026_____

Alexandria, Virginia


Copies to:

Robert R. Weed
*Counsel to the Debtor*

Robert S. Brandt
*Counsel to John Wentz*

Thomas P. Gorman
*Chapter 13 Trustee*

/s/ Klinette H Kindred
_____
The Honorable Klinette H. Kindred
United States Bankruptcy Judge


Entered On Docket: July 15, 2026